# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

| | |
|---|---|
| DONALD FRY, *et al.*, )<br><br>Plaintiffs, )<br><br>v. )<br><br>HARRISONBURG SPORTS BAR INC., )<br>*et al.*, )<br><br>Defendants. ) | Case No.: 2:23cv107 |

## REPORT AND RECOMMENDATION

This matter is before the Court on the parties' Joint Motion for Settlement Approval, ECF No. 21, and the parties' Joint Motion to Seal the Settlement Agreement and Memorandum of Understanding, ECF No. 23, both filed on September 29, 2023. The United States District Judge referred both motions to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b). ECF No. 27. The Court conducted a hearing on both motions on November 9, 2023. For the reasons explained below, the undersigned **RECOMMENDS** the Joint Motion for Settlement Approval, ECF No. 21, and the Joint Motion to Seal the Settlement Agreement and Memorandum of Understanding, ECF No. 23, be **GRANTED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The action arises out of disputes between Plaintiffs Donald Fry and Gabrielle Agola ("Plaintiffs") and Harrisonburg Sports Bar, Inc. ("HSB"), and A.J.Z., Inc., (collectively, "Defendants"), involving Plaintiffs' employment in assisting the reopening of a restaurant owned by Defendants, and alleged promise of Plaintiff Fry's future ownership in the business.

1

Plaintiffs filed an Amended Complaint on April 17, 2023, alleging two claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*—one count of unpaid overtime and straight time wages, and one count of retaliation.[1] Plaintiffs additionally brought claims for unpaid wages in violation of the Virginia Wage Payment Act, Va. Code Ann. § 40.1-29.J, unpaid minimum wages under the Virginia Minimum Wage Act, Va. Code Ann. § 40.1-28.12, breach of oral contract, unjust enrichment, unauthorized use of name and likeness under Va. Code Ann. § 8.01-40, breach of duty of loyalty, and breach of duty of care. On May 1, 2023, Defendants filed an Answer, and asserted several affirmative defenses, including, *inter alia*, that Plaintiffs were not Defendants' employees under the FLSA or Virginia law, and Defendants did not knowingly permit Plaintiffs to work during any of the alleged unpaid time. ECF No. 10. Defendants also filed an Amended Counterclaim, alleging breach of partnership agreement, and breach of partner's duty of care. ECF No. 11. Discovery then commenced, which included interrogatories and requests for production of documents. ECF No. 22.

According to the parties' submissions, Defendants HSB and A.J.Z., Inc., are Virginia stock corporations with principal offices in Chesapeake, Virginia, and registered offices in Virginia Beach, Virginia. Amended Compl. ¶¶ 3–4. Plaintiffs are experienced in the restaurant industry, and both worked as restaurant managers. *Id.* ¶ 16. Defendants previously operated a restaurant under the name "Finn McCools," and allegedly hired Plaintiffs to refurbish the restaurant and reopen it under a new name—"Fry's Big Kitchen." Plaintiff Fry contends Defendants advertised the restaurant using his name and likeness, and that Defendants enticed Fry to accept an offer of employment by promising him future ownership of the restaurant. *Id.* ¶¶ 18, 19. Plaintiffs contend

---

[1] Plaintiffs initially filed the Complaint in the Circuit Court for the City of Virginia Beach on February 17, 2023. ECF No. 1, attach. 1. Defendants removed the action to this Court on March 21, 2023, and filed an answer and counterclaim on March 28, 2023. ECF No. 1.

that between March and May of 2022, Defendants agreed to employ Plaintiffs during the "refurbishing" phase of the restaurant at $500 per week. *Id.* ¶ 32. Defendant Fry contends that during this period, he incurred five weeks of unpaid overtime wages, and three weeks of unpaid minimum wages. *Id.* ¶ 36. Plaintiff Agola contends that during that period, she incurred four weeks of unpaid overtime wages, and in one of those weeks she had unpaid minimum wages. *Id.* ¶ 37. Beginning on May 9, 2022, Defendants set Plaintiffs' rate of pay at $15 per hour, but according to Plaintiffs Defendants directed them to curtail labor costs, resulting in Plaintiffs engaging in substantial work while "off-the-clock." *Id.* ¶ 34. Plaintiff Fry contends that for a twenty-four-week period, he worked off-the-clock hours resulting in unpaid overtime. *Id.* ¶ 36. Plaintiff Agola contended that for a twenty-two-week period, she worked off-the-clock hours resulting in unpaid overtime. *Id.* ¶ 37. Plaintiffs contend that their substantial overtime work should have been obvious to Defendants. *Id.* ¶ 35. Plaintiffs further contend they expended their own funds at the direction of Defendants for operating the restaurant. *Id.* ¶ 38.

In Defendant/Counterclaimant HSB's Amended Counterclaim[2], Defendant HSB alleges that Plaintiff Fry and the owner of HSB orally agreed to form a joint venture to open a restaurant in the Finn McCool's space. ECF No. 11 ¶¶ 12, 13. Defendant HSB contends that Plaintiff Fry agreed to renovate the restaurant space solely at his expense, including the cost of labor for Plaintiff Fry and Plaintiff Agola. *Id.* ¶¶ 13, 14. Defendant HSB further alleges that Plaintiffs were responsible for payroll, and if Plaintiffs were not paid appropriately, it was due to their own failures to report their time. *Id.* ¶¶ 18–20. Defendant HSB states that Plaintiff Fry breached their partnership agreement by failing to contribute $15,000 to the partnership and pay half of all expenses as agreed, and that if Plaintiff Agola is entitled to any unpaid wages, it is the result of

---

[2] With reference to the counterclaims herein, the Court refers to Defendant/Counterclaimant HSB as Defendant HSB for ease of reference.

3

Plaintiff Fry's actions in directing or allowing Plaintiff Agola to work without properly reporting her time. *Id.* ¶¶ 29, 35.

The parties participated in a settlement conference with Magistrate Judge Robert J. Krask on September 14, 2023, at which they reached a settlement agreement. *See* ECF Nos. 15, 20. Under the terms of the proposed settlement, Plaintiff Fry and Plaintiff Agola would each receive $10,000.00 for their FLSA-implicated claims for unpaid wages and non-wage damages. The proposed settlement also includes other payments related to Plaintiffs non-FLSA-implicated claims, as well as an attorneys' fees and costs payment of $15,000. The total payment to Plaintiffs, inclusive of FLSA-implicated claims and attorneys' fees and costs, but exclusive of payments related to other claims, is $35,000.00.

On September 29, 2023, the parties filed their Joint Motion for Settlement Approval, ECF No. 21, as well as a brief in support, ECF No. 22, and a declaration from Plaintiffs' attorney, Mr. James Theuer, that documents his experience and hours expended upon Plaintiffs' case, ECF No. 22, attach. 1. The parties represent that the settlement is fair and reasonable based on the strengths and weaknesses of the case, the nature of the adversarial litigation, and the attorneys' fees to be collected. ECF No. 22 at 4–5. Additionally, the parties filed a Joint Motion to Seal the Settlement Agreement and Memorandum of Understanding. ECF No. 23. Therein, the parties represent that they negotiated that confidentiality of the settlement was a material term of the agreement, and that only one out of Plaintiffs' nine claims in the Amended Complaint was brought under the FLSA. *Id.* at 2. Because the remaining claims are not related to the FLSA, the parties argue the public does not have an interest in the settlement terms of the remaining claims. *Id.* at 3.

At the hearing on November 9, 2023, the parties amplified their positions as to why the proposed settlement was a reasonable compromise over issues in dispute, discussing at some

length the strengths and weaknesses of their cases. After considering the proffers of the parties under the governing parameters of the FLSA, the Court is satisfied that the proposed settlement is fair and reasonable. Further, the Court finds it necessary to only discuss the settlement amount that implicates FLSA claims, and accordingly, finds it appropriate to allow the parties to keep the settlement agreement and memorandum of understanding under seal.

## II. ANALYSIS

### 1. The Settlement for Plaintiffs' FLSA Claims is Fair and Reasonable

All FLSA settlements must be approved either by the United States Department of Labor or the court. *Taylor v. Progress Energy, Inc.*, 415 F.3d 364, 374 (4th Cir. 2005), *reinstated on reh'g*, 493 F.3d 454 (4th Cir. 2007), *cert. denied*, 554 U.S. 909 (2008); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982); *Lomascolo v. Parson Brinckerhoff, Inc.*, 1:08cv1310, 2009 WL 3094955, at *8 (E.D. Va. Sept. 28, 2009). Such approval is required for both class actions and individual cases, such as the one here. *See Poulin v. Gen. Dynamics Shared Res., Inc.*, No. 3:09cv58, 2010 WL 1813497, at *1 (W.D. Va. May 5, 2010). "A proposed settlement should be approved if it reflects a reasonable compromise over issues actually in dispute." *Galvez v. Americlean Servs. Corp.*, No. 1:11cv1351, 2012 WL 1715689, at *2 (E.D. Va. May 15, 2012). At the settlement hearing, "a court's role is . . . a balancing of likelihoods rather than an actual determination of the facts and law in passing upon whether the proposed settlement is fair, reasonable, and adequate." *Lomascolo*, 2009 WL 3094955, at *10 (citation omitted). "In addition to being fair and reasonable, in order to merit Court approval, the settlement must resolve a bona fide dispute over FLSA provisions." *Id.* at *16.

When considering approval of a FLSA settlement, the Court must weigh the following factors: 1) the extent of discovery that has taken place; 2) the stage of the proceedings, including

the complexity, expense and likely duration of the litigation; 3) the absence of fraud or collusion in the settlement; 4) the experience of counsel who have represented the plaintiff; 5) the probability of plaintiff's success on the merits; and 6) the amount of settlement in relation to the potential recovery. *Patel v. Barot*, 15 F. Supp. 3d 648, 656 (E.D. Va. 2014).   Analysis of these factors demonstrates that the proposed settlement in this case is reasonable.

First, the parties engaged in written discovery, wherein the parties exchanged interrogatories and requests for production of documents. ECF No. 22 at 4. The written discovery allowed the parties to obtain crucial information about Plaintiffs' job duties, their work hours, and Defendant HSB's management and policies. *Id.* This discovery provided the parties with sufficient information to evaluate adequately the merits of the claims and the defenses.

Second, while the settlement has been reached before discovery closes and before expert reports are prepared and exchanged, both parties would necessarily incur significant additional expense were this case to continue in litigation as the parties readied for trial.

Third, there is neither evidence of, nor even a suggestion of, any collusion on the part of the parties.   The settlement agreement was reached following a court-sanctioned settlement conference mediated by a Magistrate Judge.

Fourth, Plaintiffs' lead counsel, Mr. Theuer, is very experienced in FLSA and other wage litigation, having personally handled many similar cases in this Court in the past. ECF No. 22, attach. 1.   His opinion and evaluation of the reasonableness of the settlement and his recommendation to his clients that they accept it is some evidence of the reasonableness of the settlement. *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 702 (E.D. Mo. 2002).

Fifth, Plaintiffs face a reasonable prospect of succeeding on at least some aspects of the merits of their claims, given the nature of their claims and the evidence that Plaintiffs worked

substantial hours to prepare the restaurant for opening, as well as overtime once the restaurant opened. Both Plaintiffs included a spreadsheet of their wage damages as exhibits to the Amended Complaint, which detail unpaid hours that each Plaintiff worked. ECF No. 6, attachs. 1, 2. What is decidedly uncertain is the extent to which Plaintiffs can prove their claim. In their briefing as well as at the hearing, Defendants represented that there was some evidence that Plaintiff Fry was not an employee, but rather a partner in the ownership and operation of the restaurant, and that he was therefore exempt from FLSA requirements. Defendant HSB filed a counterclaim against Plaintiff Fry to pursue this theory and obtain a remedy for Plaintiff Fry's alleged violation of his duties as a partner in the business. Furthermore, Defendants represented that there was some evidence that Plaintiff Agola did not accurately report her time, and/or Plaintiff Fry directed her not to report some regular or overtime hours. Consequently, the size of any award should Plaintiffs succeed at trial is reasonably in question, as well as the possibility of liquidated damages under these circumstances.

The final factor, the amount of settlement in relation to the potential recovery, weighs in favor of approving the settlement. To determine whether the settlement agreement is fair, the court must have "some knowledge of the value of the released claims," otherwise, "the fairness of the compromise remains indeterminate." *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1352 (M.D. Fla. 2010). Under the FLSA, an employee can recover for unpaid minimum wages and unpaid overtime for a two-year period up to the time the claim is filed. 29 U.S.C. § 255. An employee can also recover a like amount in liquidated damages unless the employer can demonstrate that its failure to pay the wages due under the FLSA was in good faith. 29 U.S.C. §§ 216(b), 260.

The alleged employment in this case spanned a period from March 2022 to October 2022, and thus, if successful, Plaintiffs could recover their back wages, and potentially liquidated

damages for this six month period, if Defendants were not able to demonstrate that the failure to pay Plaintiffs their wages was done in good faith. Defendants raised the argument that Plaintiff Fry was exempt from the FLSA, and that Defendants were unaware that Plaintiff Agola worked the claimed hours. Based on Defendants' submissions as well as their representations at the hearing, the potential to recover liquidated damages is uncertain, as Defendants could make a reasonable argument that they acted in good faith. Moreover, the settlement dismisses Defendants counterclaim against Plaintiff Fry, and thus he is no longer subject to additional litigation. Because of these uncertainties, such compromise is reasonable under these circumstances. The desired settlement fairly reflects the parties' wish to finalize all potential litigation, put an end to the expenditure of attorneys' fees and costs, and therefore end the uncertainty that accompanies all litigation.

Finally, the Court must analyze attorneys' fees in approving the proposed settlement. The FLSA "contemplates that the wronged employee should receive his full wages plus the penalty without incurring any expenses for legal fees or costs." *Poulin*, 2010 WL 1813497, at *1 (quoting *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009)). Therefore, "the FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Id.* Here, the proposed settlement provides for payment of $15,000.00 in attorneys' fees and costs. The Court evaluates the reasonableness of attorneys' fees by comparing the requested amount to the lodestar amount, which is defined as a "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. Mills Corp.*, 549 F.3d 313, 320–21 (4th Cir. 2008). "In deciding what constitutes a 'reasonable' number of hours and rate, [the Fourth

Circuit] has instructed that a district court's discretion should be guided by the following twelve factors:"

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243-44 (4th Cir. 2009) (citation omitted). In support of their request for attorneys' fees, Plaintiffs agreement with counsel, Mr. Theuer, sets Mr. Theuer's fees at one-third of the recovery in this matter, or the value of Mr. Theuer's time spent at his hourly rate of $365 per hour. ECF No. 22, attach. 1 at 3. Though the parties wish to keep their total settlement amount including nonwage claims confidential, under either the one-third contingency agreement or Mr. Theuer's hourly rate of $365.00 per hour, the attorneys' fee settlement of $15,000 is reasonable.

Plaintiffs proffered counsel's itemized billing statement, which demonstrated that counsel, along with a single entry from a paralegal, spent 58.7 hours working on their case. ECF No. 22 attach. 1 at 7–11. The billable rate charged by Mr. Theuer was $365.00 per hour, who worked 52.6 hours on the case and the billable rate for his paralegal services was $110.00 per hour, who worked 6.1 hours on the case, for a total of 58.7 hours. *Id.* The lodestar figure at the rates requested would result in a total of $19,497.50.[3] Plaintiffs' request consequently is less than what they would

---

[3] Mr. Theuer's hours worked includes 1.2 hours that he billed for what appears to be an initial consultation for a flat $175 fee, as well as .3 hours that he billed, but did not charge, for a memorandum regarding a potential conflict of interest. The lodestar figure accounts for these discrepancies.

be entitled to under a lodestar calculation, and appropriate under the contingency fee calculation had Plaintiffs prevailed at trial.

Given the *Robinson* factors cited above, the Court **FINDS** that the fee request is fair and reasonable. Mr. Theuer is an experienced practitioner who achieved a successful result. The rate charged by Mr. Theuer is reasonable based on his experience and competence, including participation as counsel of record in over twenty-four FLSA cases in the Eastern District of Virginia, and the nature of FLSA litigation. *See, e.g., Stone v. SRA Int'l, Inc.*, No. 2:14cv209, 2015 WL 12748271, at *3 (E.D. Va. Mar. 20, 2015) (finding attorney hourly rates of $200 to $375 reasonable). The fee also encompasses the confidential settlement of other claims not related to the FLSA. Finally, the Defendant does not challenge the amount of the fee requested.

Consequently, given the strength of Plaintiffs claims, the defenses advocated by the Defendants, the uncertainty of damages, consideration of appropriate attorneys' fees and costs, and the general uncertainty and expense that accompanies all litigation, the Court **FINDS** that the proposed settlement is fair and reasonable and in accordance with the purposes of the FLSA, and **RECOMMENDS**, that the parties' Joint Motion for Settlement Approval, ECF No. 21, be **GRANTED**.

   *2. The Nature of this Case and the Settlement of Non-FLSA Claims Warrants Maintaining the Settlement Agreement and Memorandum of Understanding Under Seal.*

"[T]he common law right of access to judicial records and documents is implicated in a motion to file an FLSA settlement agreement under seal." *Baker v. Dolgencorp, Inc.*, 818 F. Supp. 2d 940, 943 (E.D. Va. 2011) (citation omitted). An FLSA settlement agreement "is a judicial record that triggers the common law right of public access" and "the public has an interest in determining whether the Court is properly fulfilling its duties when it approves an FLSA settlement agreement." *Id.* However, "[t]he presumption of public access can be rebutted . . . 'if

10

countervailing interests heavily outweigh the public interests in access.'" *Id.* (quoting *Rushford v. New Yorker Magazine Inc.*, 846 F.2d 249, 253 (4th Cir. 1988)). In considering whether to seal an FLSA settlement agreement, courts consider public access interests, such as " whether the records are sought for improper purposes such as promoting public scandals or gaining a business advantage; whether release would enhance the public's understanding of an important historical event; and whether the public has already had access to the information contained in the records." *Id.* (citation omitted).

Here, the parties contend that only one of Plaintiffs' nine claims are brought under the FLSA, and the remainder of the claims in this lawsuit involve non-FLSA claims. ECF No. 23 at 3. At the hearing, the parties represented that the settlement encompassed other claims in the lawsuit, and encompassed the risk that Plaintiff Fry would be classified as exempt under the FLSA. The parties argue that there is no presumption of public access to the non-FLSA claims, and the parties have an interest in confidentiality of the remaining claims to alleviate any concerns of additional litigation. *Id.* at 2–3.

Under these circumstances, the Court finds it appropriate to allow the parties to maintain the settlement agreement and memorandum of understanding under seal. First, the Court disclosed and analyzed all FLSA-related payments in this Report and Recommendation, and accordingly, the monetary sum of the FLSA-related settlement will be in the publicly available record.[4] In *Miles v. Ruby Tuesday, Inc.*, the court stressed the public's "substantial interest in ensuring the right of access to the details of the parties' settlement, including the amounts paid in damages or penalties and attorneys' fees." 799 F. Supp. 2d 618, 623–24 (E.D. Va. 2011) (highlighting the right of the public's access to court decisions approving FLSA settlements). By ultimately

---

[4] As explained in Section IV, *infra*, the Court will file this Report and Recommendation under seal for fourteen days to allow the parties to object to Court's findings in the Report and Recommendation.

maintaining this Report and Recommendation on the public docket, which details the monetary sums of settlement and attorneys' fees, the Court can preserve the goal of maintaining the public's common law right of access to FLSA settlement agreements. Second, the parties identified a strong interest in confidentiality of the remainder of the settlement agreement. At the hearing, the parties represented that a portion of the lawsuit (including the Amended Complaint and Amended Counterclaim) involve an alleged partnership dispute, the details of which, the parties maintain, divulges Defendants' confidential business information. Accordingly, because the FLSA-related claims and damages are analyzed in this public Report and Recommendation, the Court **FINDS** that it is appropriate to allow the parties to maintain confidentiality of the non-FLSA related settlement and **RECOMMENDS** that the parties Joint Motion to Seal the Settlement Agreement and Memorandum of Understanding, ECF No. 23, be **GRANTED**.

### III. RECOMMENDATION

For the reasons stated above, the undersigned **FINDS** the settlement is fair and reasonable in light of the evidence presented, and **RECOMMENDS** that Joint Motion for Settlement Approval, ECF No. 21, be **GRANTED**. Further, the undersigned **RECOMMENDS** that the Joint Motion to Seal the Settlement Agreement and Memorandum of Understanding, ECF No. 23, be **GRANTED**.

### IV. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is mailed to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure

Rule 6(a).  A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2.  The United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made.  The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to all counsel of record.  The Clerk is further **DIRECTED** to maintain this Report and Recommendation under seal for fourteen days.  If there are no objections to this Report and Recommendation, the Clerk is **DIRECTED** to unseal this Report and Recommendation.  If there is any objection to this Report and Recommendation, the Clerk is **DIRECTED** to maintain this Report and Recommendation under seal until otherwise directed by the District Judge.

It is so **ORDERED**.

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
December 22, 2023